United States District Court
Southern District of Texas

**ENTERED**
October 19, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHRISTOPHER KONRAD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-25-4316 |
| | § | |
| SELENE FINANCE LP and US BANK TRUST, N.A., NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR VRMTG ASSET TRUST, its/their successors and/or assigns, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending is Defendants Selene Finance, LP and US Bank Trust, N.A.'s Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) (Document No. 18), to which Plaintiff Christopher Konrad responded and Defendants replied. After carefully considering the Motion, Response, Reply, and applicable law, the Court concludes as follows.

## I. Background

On October 26, 2012, Plaintiff Christopher Konrad and his wife refinanced the debt on their homestead property, 8726 Magnolia Forest Dr., Sugar Land, Texas 77479, (the "Property") by executing a Note in the principal amount of $267,700 payable to Everett

Financial, Inc. DBA Supreme Lending, Document No. 12 at 3-4, and secured by a Deed of Trust on the Property.[1] According to Plaintiff's Amended Complaint, Everett Financial Inc. assigned the mortgage to Wells Fargo Bank, N.A. in October 2016, which in turn assigned the mortgage to Defendant US Bank Trust, N.A. as Owner Trustee for VRMTG Asset Trust (US Bank) in October 2019. *See* Document No. 12 at 4, and 12-4. In August 2019 Plaintiff and his wife received notice that Defendant Selene Finance, LP (Selene) had become the new mortgage servicer. Document No. 12-7 at 1.

Plaintiff concedes he fell behind on his mortgage payments before Selene became the servicer. Plaintiff claims his default was due to the changes in loan servicers, the Lender's evident withdrawal of its prior waiver to require escrow funds be paid by Plaintiff, plus the addition of what Plaintiff terms "unnecessary fees and costs." Document No. 12 at 5. Plaintiff claims Defendant "attempted to foreclose" without providing him notice, which prompted him to file a Chapter 13 proceeding in the United States Bankruptcy Court on May 6, 2019. The Bankruptcy Court dismissed his case on August 20, 2019. Id. Since 2019, Plaintiff claims to have requested detailed escrow accounting through a qualified

[1] At the Rule 16 Scheduling Conference Plaintiff's counsel advised that Plaintiff and his wife Marnie Konrad remain married, live together, and counsel stated no differences between them on this case. Counsel explained he filed the case only in the name of Mr. Konrad because it was he who paid counsel his retainer.

written report ("QWR") but never received such statements. Id. at 6. Plaintiff also conclusorily claims that Defendants "padded" the mortgage with "unnecessary, incorrect, and unexplained fees" to keep him in a position of default. Id. According to the Amended Complaint, monthly statements from the Defendants provided inconsistent information, with one report stating, "[y]our loan has been past due since 10/01/2016" and another stating, "[y]our loan has been past due since 01/01/2018." Id. Plaintiff also alleges that he attempted to make partial payments in 2024, but Defendants returned them without explanation. Id. at 7.

Plaintiff pleads he experienced a decrease in income during the Covid-19 Pandemic. Id. He conclusorily alleges to have requested relief under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") although he now admits he did not know about any CARES Act violations until he filed this litigation in 2025, years after the Act expired. Id. at 7; Document No. 19 at 8. Plaintiff filed a second Chapter 13 bankruptcy petition in December 2021 but pleads he continued to make mortgage payments and the bankruptcy plan payments. Document No. 12 at 8. He conclusorily alleges that his payments were improperly applied and that Defendants continued to impose unjust fees. Id. Plaintiff voluntarily dismissed his second bankruptcy case in April 2024. Id. In 2023 and 2024 Plaintiff submitted several loan modification

applications. Id. Defendants denied these applications on at least three occasions. Id.

In June 2025, Plaintiff sent another loan modification application to Defendants. Id. at 10. Defendants denied this application in August 2025, and Plaintiff timely appealed the denial. Id. Before Defendants rendered a final decision on his appeal, Plaintiff learned during a phone call with Defendants' representative that Defendants had posted the property for foreclosure. Id. During another call on August 12, 2025, Plaintiff informed Defendants' representative that he had not received a written notice of foreclosure. Id. at 11. Plaintiff pleads that Defendants' representative falsely replied that a written notice is not required in Texas. Id.

Plaintiff filed an Original Petition and an Application for *Ex Parte* Temporary Restraining Order and Temporary Injunction in the 268th Judicial District Court in Fort Bend County on August 28, 2025. Document No. 1 at 1. The state court judge issued a TRO, and set a hearing on Plaintiff's temporary injunction motion for September 12, 2025. Document No. 1-9. The day before that hearing, Defendants removed the case to federal court. Plaintiff filed an Amended Complaint (Document No. 12) on February 18, 2026, and Defendants timely moved to dismiss under FED. R. CIV. P. 12(b)(6). (Document No. 18).

## II. Standard of Review

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion for dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Plausibility is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, 'it stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 127 S. Ct. at 1966).

## III. Analysis

Defendants move under Rule 12(b)(6) to dismiss all alleged claims Plaintiff asserts, which are: (1) breach of contract; (2) violations of the Real Estate Settlement Procedures Act("RESPA") and 12 C.F.R. § 1024.41 ("Regulation X"); (3) common law fraud; (4) violations of the Texas Debt Collection Act ("TDCA"); (5) violations of the CARES Act; and (6) negligent

misrepresentation. Plaintiff seeks actual damages, statutory damages, exemplary damages, and attorney's fees.

1. Breach of Contract

The elements for breach of contract under Texas law are as follows: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; (4) damages sustained by the plaintiff as a result of the breach." Smith Int'l, Inc. v. Egle Group, LLC, 490 F.3d 380, 387 (5th Cir. 2007) (quoting Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C., 51 S.W.3d 345, 351 (Tex. App. – Houston [1st Dist.] 2001, no pet.)).

Plaintiff alleges Defendants violated paragraph 22 of the Deed of Trust and TEX. PROP. CODE § 51.002(d) by posting the Property for foreclosure sale without having provided to Plaintiff a Notice of Default and Opportunity to Cure, and by failing to provide him at least 30 days notice to cure the default before accelerating the loan and posting the Property.

Under Texas law, a claim for breach of contract requires a showing of "damages sustained by the plaintiff as a result of the breach." Sport Supply Grp., Inc. v. Columbia Cas. Co., 335 F.3d 453, 465 (5th Cir. 2003). In cases like this, where no foreclosure sale occurred, the failure to give notice of a foreclosure sale that does not happen results in no damages. Juarez v. Wells Fargo

Bank, N.A., 2020 WL 5709258, at *7 (W.D. Tex. Sept. 23, 2020) (granting summary judgment for mortgagee where no foreclosure sale had occurred, "plaintiff cannot show any economic damages from the alleged deficiencies in the notice of default."). In De La Mora v. CitiMortgage, Inc., 2015 WL 12803712, at *1-2 (S.D. Tex. Jan. 26, 2015) (Crane, J.), the servicer posted the property for foreclosure sale without giving the notice required by the deed of trust, and--just as in the instant case--the plaintiff obtained a temporary restraining order in state court preventing the sale. After the case was removed to federal court, Judge Crane (now Chief Judge) granted defendants' motion to dismiss, concluding, "[p]laintiff cannot show damages resulting from any such breach because no foreclosure sale has occurred." Id. at *2. *See also* Johnson v. Bank of Am., N.A., 2014 WL 4923970, at *10 (S.D. Tex. Sept. 30, 2014) (Lake, J.) ("Defective notice may provide grounds for a wrongful foreclosure action, assuming the property is sold, but Texas does not recognize a cause of action for attempted wrongful foreclosure.") (citations omitted).

Likewise, because Plaintiff has not alleged that a foreclosure sale occurred, Plaintiff fails to state a claim for violation of § 51.002. Maldonado v. Wells Fargo Bank, N.A., 2017 WL 4950063, at *4 (S.D. Tex. Nov. 1, 2017) (explaining that improper notice arguments such as this are generally construed as wrongful foreclosure claims and are subject to dismissal where no

foreclosure had taken place); Anderson v. J.P. Morgan Chase, 2013 WL 6524630, at *2 (S.D. Tex. Dec. 11, 2013) ("[T]o maintain a claim under § 51.002 of the Texas Property Code based on insufficient or improper notice there must be a sale of the property."); Ayers v. Aurora Loan Servs., LLC, 787 F. Supp. 2d 451, 454 (E.D. Tex. 2011) (holding where no foreclosure sale has occurred, "Plaintiff's property code allegations do not state a claim on which relief can be granted.").

In sum, Plaintiff fails to state a plausible cause of action upon which relief can be granted for breach of contract or violation of § 51.002(d) of the Texas Property Code.

2. Violations of RESPA and Regulation X

Plaintiff alleges that Defendants violated RESPA by engaging in dual tracking,[2] failing to respond to a qualified written request (QWR), not providing escrow accounting, and conveying inaccurate information regarding the loan. Document No. 12 at 13-14. In 2011, The Consumer Financial Protection Bureau ("CFPB") issued Regulation X to protect consumers during the mortgage process. Real Estate Settlement Procedures Act (Regulation X), 76

[2] "Dual tracking is the term given to situations in which the lender actively pursues foreclosure while simultaneously considering the borrower for loss mitigation options." *See* Gresham v. Wells Fargo Bank, N.A., 642 F. App'x. 355, 359 (5th Cir. 2016) (per curiam).

FR 78978-01. Pursuant to 12 U.S.C. § 2605(f), plaintiffs have a private right of action for violations under this regulatory scheme. 12 C.F.R § 1024.41.

Section 1024.41(f) and (g) prohibit a servicer from issuing a notice of foreclosure after a borrower submits a complete loss mitigation application unless the servicer denied the application, there is no appeal of the denial, or the servicer rejects the appeal. 12 C.F.R. § 1024.41(f). Plaintiff pleads that he submitted a complete loan modification request in mid-June 2025 and that Defendants sent a notice of foreclosure during a pending appeal of the denial. Section 1024.41(i), however, requires a servicer to comply with the requirements of this section only for a borrower's single complete loss mitigation application unless after a previous application the borrower has not been delinquent. In other words, the dual-tracking provision applies only to a borrower's *first* complete loss mitigation application unless he had become current on the debt after a previous application. Wilson v. Deutsche Bank Tr. Co. Americas as Tr. for Residential Accredit Loans, Inc., Mortg. Asset-Backed Passthrough Certificates, Series 2006-QS5, 2019 WL 2578625, at *2 (N.D. Tex. June 24, 2019) (Fitzwater, J). A Plaintiff must plead that the loan modification was their first complete application or that they had become current on the loan after a prior application. Otherwise, dual tracking by a servicer is not a violation. Ruiz

v. PennyMac Loan Servs., LLC, 2018 WL 4772410, at *2 (N.D. Tex. Oct. 3, 2018) ("Ruiz must allege facts that plausibly plead a claim under one of these alternatives in order to state a claim for a violation of § 1024.41."). Not only does Plaintiff fail to allege that this application was his first or that he became current on the loan after a previous application, but he states "Defendants denied Plaintiff's applications for loan modifications on at least three occasions" in the past. Document No. 12 at 8. Plaintiff fails to state a plausible claim for dual-tracking under RESPA and Regulation X.

Plaintiff's remaining allegations under RESPA, namely, that Defendants did not respond to a QWR in 2019, that an escrow accounting was not provided, and Plaintiff's conclusory allegation that inaccurate information was provided regarding the loan, fail to allege facts as to how these alleged violations caused Plaintiff to sustain actual damages.[3] Under RESPA, servicers are liable to

---

[3] Defendants assert the affirmative defense that Plaintiff's alleged QWR violation is also time barred under the three years statute of limitations. 12 U.S.C. § 2605(e), § 2614. "Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court . . . or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 2605 of this title." 12 U.S.C. § 2614. *See* Haase v. Countrywide Home Loans, Inc., 2012 WL 12871989, at *5 (S.D. Tex. Nov. 1, 2012), report and recommendation adopted sub nom. Haase v. Countrywide Hom E Loans, Inc., 2012 WL 12871951 (S.D. Tex. Dec. 5, 2012), aff'd sub nom. Haase v. Countrywide Home Loans, Inc., 748 F.3d 624 (5th Cir. 2014) ("such a [QWR] claim brought under 12 U.S.C. § 2605, is subject to a three year statute of limitations.") Plaintiff alleges he sent a QWR on

borrowers for "any actual damages" resulting from their failure to comply with the response requirements. 12 U.S.C. § 2605(f)(1)(A). To show damages, Plaintiff must establish "a causal connection between the RESPA violation and the actual damages." Green v. FCI Lender Servs., Inc., 2022 WL 23081467, at *5 (N.D. Tex. Nov. 22, 2022). "A well-pleaded claim should therefore allege facts showing not only that the plaintiff suffered damages, but also that those damages were incurred 'as a result of the failure.'" Id. (citing 12 U.S.C. § 2605(f)(1)(A)).

Plaintiff asserts as damages that he incurred attorney's fees through litigating this matter and has lost equity in the homestead due to the increased mortgage balance on his delinquent loan. Document No. 12 at 8. Before making the 2019 QWR request, receiving inaccurate statements, and making requests for escrow accounting, Plaintiff had already fallen behind on his mortgage payments. Document No. 12 at 5. Plaintiff does not plead facts from which it can reasonably be inferred that any of these alleged violations of RESPA was the cause of Plaintiff failing to make his mortgage payments over the years of his delinquency. "Threadbare recitals of the elements of a cause of action, supported by mere

---

November 8, 2019, and that his wife sent another one on May 7, 2020. Document No. 12-7 at 1. Plaintiff did not file this claim in state court until August 28, 2025, well outside the three-year statute of limitations period.

conclusory statements, do not suffice" to show actual damages. Johnson v. Harris Cnty., 83 F.4th 941, 945 (5th Cir. 2023) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, (2009)). Additionally, attorney's fees are not cognizable damages for a RESPA violation. "Fees and damages are separate awards under the statute [12 U.S.C. § 2605(f)(1)(A), (f)(3)] and should be defined and analyzed separately." Ruiz at *3; Whittier v. Ocwen Loan Servicing, LLC, 594 F. App'x 833, 836 (5th Cir. 2014) (holding litigation fees and expenses are not actual damages under RESPA, but "in addition" to actual damages.

Section 2605(f) provides that in addition to any actual damages the court may allow statutory damages not to exceed $2,000 "in the case of a pattern or practice of noncompliance." Plaintiff's request for statutory damages fails because he has failed to state a plausible claim for actual damages, and therefore is unable to recover *additional* damages. Moreover, a "pattern or practice of noncompliance" is understood to be a "standard or routine way of operating." McLean v. GMAC Mortg. Corp., 595 F. Supp. 2d 1360, 1365 (S.D. Fla. 2009), aff'd, 398 F. App'x 467 (11th Cir. 2010); In re Tomasevic, 273 B.R.682, 686 (Bankr.M.D.Fla.2002) (holding that a failure to respond to one qualified written request did not amount to a "pattern or practice"). Likewise, in the six or seven years after Plaintiff refinanced his home, the mortgagee's failure to respond to a QWR

and a couple of mistaken notes on when Plaintiff's first default occurred are not sufficient facts to support a plausible claim of a routine practice of noncompliance with RESPA. Plaintiff fails to state a plausible cause of action for violation of RESPA upon which relief can be granted.

3. Common Law Fraud

Plaintiff's common law fraud allegations are as follows:

> Defendant Selene has "padded" Plaintiff's mortgage to rob Plaintiff of valuable equity in his homestead, advised Plaintiff that physical notices are not required, attempting to foreclose on Plaintiff despite his appealing the denial of his loan modification, refusing to disclose escrow accounting that Plaintiff does not have an equal opportunity to access and refused to accept Plaintiff's partial payments, even though it accepted several partial payments in his bankruptcy cases.

Document No. 12 at 14. These allegations fail to meet the heightened pleading standard under FED. R. CIV. P. 9(b). The Fifth Circuit "interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 339 (5th Cir. 2008). Additionally, to plead common law fraud, Plaintiff must plead the following:

> (1) a material representation was made, (2) that the representation was false, when the representation was made, (3) the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion, (4) that the speaker made the misrepresentation with the intent that the other party should act upon it, (5) the party acted in reliance on the misrepresentation, and (6) the party thereby suffered injury.

Motten v. Chase Home Fin., 831 F. Supp. 2d 988, 1005 (S.D. Tex. 2011).

Defendants' conclusory allegations of fraud quoted in full above wholly fail to meet the heightened pleading standard of Rule 9(b) and thus fail to state a claim upon which relief can be granted. *See* Dorsey, 540 F.3d at 339 (affirming Rule 12(b)(6) dismissal of a case where plaintiff failed to plead the "who, what, when, where, and how" to sustain a fraud claim).

4. Violations of the Texas Debt Collection Act (TDCA)

Plaintiff accuses Selene of violations of subsections of the TDCA § 392.301, "Threats or Coercion," and § 392.304, "Fraudulent, Deceptive, or Misleading Representations." Mortgage servicers and assignees are debt collectors under the TDCA, "irrespective of whether the [borrower's] mortgage was already in default at the time of its assignment." Miller v. BAC Home Loans Servicing, L.P., 726 F.3d 717, 723 (5th Cir. 2013). Plaintiff alleges all in one sentence that Defendant Selene violated § 392.301(7), 392.301(a)(8), § 392.304(a)(8), and § 392.304(a)(19).

The putative factual basis for these law violations is found in the preceding paragraph 48 of Plaintiff's Amended Complaint, which accuses Defendant Selene of failing to provide Plaintiff "with an escrow accounting despite repeated request, adding large unnecessary and unjustified fees, and of wholly failing or refusing to ever provide Plaintiff with a Notice of Default and Opportunity to Cure notice." Document No. 12 at 15. These are the kind of conclusory statements that the Supreme Court found wanting in Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

Failing to provide Plaintiff "with an escrow accounting" or failing to provide Plaintiff with a "Notice of Default and Opportunity to Cure" do not plausibly plead threats or coercion proscribed by § 392.301(a)(7) or (a)(8) or "fraudulent, deceptive, or misleading representations" proscribed by § 392.304(a)(8) or (a)(19). The vague and conclusory allegation that Defendant Selene added "large unnecessary and unjustified fees" without identifying even one such unwarranted fee, lacks any plausibility. "It is the conclusory nature of [Plaintiff's] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." Iqbal, 129 S. Ct. at 1951. Plaintiff fails to state a claim under the TDCA upon which relief can be granted.

5. Violations of CARES Act

The Coronavirus Economic Stabilization Act 15 U.S.C. § 9001 *et seq.*, ("CARES Act") of 2020, now expired, was a comprehensive pandemic enactment intended to help keep American workers paid and employed, to provide unemployment insurance assistance, to provide economic stabilization and assistance to severely distressed sectors of the United States economy, and to provide air carriers support. Plaintiff alleges--without any citations to the CARES Act--that "Defendants never offered the required loss mitigation options to Plaintiff and the failure to meet that duty is the cause of Plaintiff's damages and continued hardship." Document No. 12 at 17. Plaintiff cites no part of the statute that imposed such a "duty" to offer any "required loss mitigation options."[4]

Unlike RESPA, *see* pages 8-9 above, there is no express or implied private cause of action under the CARES Act. Diagnostic

---

[4] Title 15 U.S.C. § 9056(b) permitted a borrower with a Federally backed mortgage loan experiencing a financial hardship due to the COVID-19 emergency to request and obtain forbearance for up to 180 days, and an extension of forbearance for up to an additional 180 days. Plaintiff fails to plead that during the COVID-19 emergency he ever made a request for up to 180 days' forbearance under § 9056(b)(1) and (2) and that Defendants denied such a request for forbearance or denied any requested extension of such a forbearance for up to an additional 180 days. That Plaintiff in fact never made such requests pursuant to the CARES Act is implicitly conceded in his Response to the instant Motion to Dismiss in which he admits, "Plaintiff only recently discovered Defendants' violations of the CARES Act as a result of the instant litigation." Document No. 19 at 8. Plaintiff did not file the instant litigation until late August 2025. Document No. 1-4 at 2.

Affiliates of N.E. Hou., LLC v. Aetna, Inc., 654 F. Supp. 3d 595, 611 (S.D. Tex. 2023) (holding the CARES Act "does not carry with it an implied private cause of action".); Pena v. PHH Mortg. Corp., 2022 WL 398399, at *3 (N.D. Tex. Jan. 24, 2022), report and recommendation adopted, 2022 WL 394759 (N.D. Tex. Feb. 9, 2022) (holding in a mortgage foreclosure case that the CARES Act "does not create a private right of action--every district court to consider this question has held as much."); *see also* Shehan v. United States Dept. of Justice, 2020 WL 7711635, at *11 (S.D. Ohio Dec. 29, 2020) (observing the absence of any decision "finding that the CARES Act creates any implied private right of action"); Radix Law PLC v. JPMorgan Chase Bank N.A., 508 F. Supp. 3d 515, 520 (D. Ariz. 2020) (finding "no private right of action to enforce the CARES Act"); Am. Video Duplicating, Inc. v. City Nat'l Bank, 2020 WL 6882735, at *5 (C.D. Cal. Nov. 20, 2020) ("[u]nsurprisingly, every court to address whether the CARES Act created an implied private right of action has held that it does not.").

Dismissal under Rule 12(b)(6) is appropriate for claims alleged by an individual under a federal statute where there exists no private cause of action. *See* Fair v. Verizon Commc'ns Inc., 621 F. App'x 52, 53 (2d Cir. 2015) ("[d]eterminations that a federal statute does not provide a private right of action are typically subject to dismissal under Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim."); Republic of Iraq v. ABB AG, 768 F.3d 145, 171 (2d Cir.2014) (affirming district court's dismissal under Rule 12(b)(6) because the Foreign Corrupt Practices Act does not provide a private right of action); McShane Constr. Co., LLC v. Gotham Ins. Co., 867 F.3d 923, 928 (8th Cir. 2017) (affirming the district court's Rule 12(b)(6) dismissal because "[t]wo of McShane's claims are based upon Nebraska statutes that provide no private right of action and thus, are subject to dismissal for failing to state a claim"). Because Plaintiff has no private right of action under the CARES Act, he fails to state a CARES Act claim upon which relief can be granted.

6. Negligent Misrepresentation

To prevail in Texas on a claim for negligent misrepresentation, a plaintiff must establish:

> (1) [T]he representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

Fed. Land Bank Ass'n of Tyler v. Sloane, 825 S.W.2d 439, 442 (Tex.1991).

Plaintiff pleads "[d]efendant negligently misrepresented material facts regarding the loan status, modification offers, fee applications, and accounting, while engaged in its ordinary business with a pecuniary interest" and that Plaintiff "reasonably relied on these misrepresentations". Document No. 12 at 18. Not only are Plaintiff's allegations "mere conclusory statements," Iqbal, 129 S. Ct. at 1940, but they also fail to allege the requisite elements of negligent misrepresentation.

Additionally, Plaintiff fails to allege that Defendants made their putative misrepresentations to guide him in his business. Negligent misrepresentation is a "commercial tort" which requires a negligent misrepresentation made to others to guide them in their business. See Douglas v. Wells Fargo Bank, N.A., 2018 WL 2064388, at *3 (N.D. Tex. May 2, 2018), aff'd, 992 F.3d 367 (5th Cir. 2021) (a home foreclosure case holding the homeowners/mortgagors' "negligent-misrepresentation claim fails because they have not alleged that Wells Fargo sent the letters to guide them or anyone else in their business"); *see also* Steele v. Green Tree Servicing, LLC, 2010 WL 3565415, at *8 (N.D. Tex. Sept. 7, 2010) (Fitzwater, J.), aff'd sub nom. Steele v. Green Tree Servicing, L.L.C., 453 F. App'x 473 (5th Cir. 2011) (*sua sponte* granting summary judgment on claim for negligent misrepresentation because the plaintiffs/homeowners did not show "that the information [the loan servicer] supplied [was] for guidance of others in their

business”). Plaintiff fails to plead a plausible cause of action upon which relief can be granted on negligent misrepresentation.

Order

For the foregoing reasons, it is

ORDERED that Defendants Selene Finance, LP and US Bank Trust, N.A.’s Motion to Dismiss (Document No. 18) is GRANTED, and all of Plaintiff Christopher Konrad’s alleged claims are DISMISSED on the merits WITH PREJUDICE pursuant to Rule 12(b)(6).

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED at Houston, Texas, on this 19TH day of October 2026.

Ewing Werlein Jr.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE